**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

March 19, 2021
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)   No. 19-1067** (BOR Appeal No. 2054120)
                        (Claim No. 2018016155)

**CONNIE TITUS,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Murray American Energy, Inc., by Counsel Denise D. Pentino and Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Connie Titus, by Counsel Robert L. Stultz, filed a timely response.

The issues on appeal are an additional compensable condition and medical benefits. The claims administrator added right hip sprain to the claim on September 21, 2018. On September 24, 2018, it denied authorization of an evaluation by Scott Schweizer, M.D. The claims administrator denied a left shoulder MRI on October 12, 2018. On December 5, 2018, it denied a referral to a pain clinic and a physical therapy consultation. On December 6, 2018, the claims administrator denied physical therapy and injections. The Workers' Compensation Office of Judges ("Office of Judges") modified the September 21, 2018, decision to reflect that right hip labral tear is a compensable condition. It also reversed the remainder of the claims administrator's decisions and authorized the requested medical treatment in its March 29, 2019, Order. The Order was affirmed by the Board of Review on October 18, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Titus, a coal miner, was injured in the course of her employment on January 12, 2018, when the bus she was driving in a coal mine struck another bus. She sought immediate treatment at Wheeling Hospital Emergency Room. Ms. Titus reported that she was traveling about fifteen

1

miles per hour and was not wearing a seatbelt at the time of her accident. She stated that she had pain in her right thigh, knee, and hip. A left shoulder x-ray showed no acute findings. A CT scan of the cervical spine showed multilevel disc narrowing and spurring but no acute injury. Ms. Titus was diagnosed with right hip, right knee, and acute lumbar sprains. The Employees' and Physicians' Report of Injury was also completed that day at Wheeling Hospital and indicates Ms. Titus was injured when she was struck head on by a bus. The diagnoses were right hip strain, right knee sprain, lower back strain, unspecified head injury, and left shoulder pain.

Ms. Titus was treated for her compensable injury by Ross Tennant, FNP, on January 15, 2018. She reported significant pain in her lower back and right hip, extending to her right leg and foot. Ms. Titus had no left shoulder pain. Mr. Tennant diagnosed closed head injury, lumbar strain, and right hip contusion. On January 22, 2018, Ms. Titus reported pain in her mid and lower back, a burning sensation in her right thigh, and numbness in her right toes. Ms. Titus's right hip pain had improved. The claim was held compensable for low back strain, right hip strain, and right knee sprain on January 26, 2018.

On January 29, 2018, Ms. Titus reported lower back and right hip pain to Mr. Tennant. She was diagnosed with closed head injury, lumbar strain, right hip contusion, cervical thoracic sprain, and left shoulder sprain. Physical therapy was recommended for the cervical and left shoulder sprains. A right hip MRI was performed on February 2, 2018, and showed a possible labral injury.

Ronald Fadel, M.D., performed a Record Review on February 3, 2018, in which he opined that cervicalgia should be added to the claim. He found that Ms. Titus struck her head at the time of her injury and reported head/neck pain when she sought treatment. Dr. Fadel found no neurological injury. Ms. Titus was seen at Hudson Premier Physical Therapy on February 5, 2018, for cervical and left shoulder sprains caused by a work-related accident. Ms. Titus reported that she did not have cervical or left shoulder problems prior to the injury. The claims administrator authorized physical therapy for a cervical strain. On February 6, 2018, Ms. Titus returned to Dr. Titus who noted that a lumbar MRI showed disc bulging at L5-S1. A right hip MRI showed no acute injury.

David Soulsby, M.D., performed an independent medical evaluation on March 6, 2018, in which he noted that Ms. Titus complained of pain in her chest, right hip, and lower back. Dr. Soulsby diagnosed lumbar sprain, mild to moderate lumbar degenerative disc disease, cervical sprain, and left shoulder sprain and found that Ms. Titus had not reached maximum medical improvement. He recommended a left shoulder MRI and opined that Ms. Titus's pain likely resulted from any injury to the soft tissues at the upper end of her mastectomy scar. Dr. Soulsby opined that Ms. Titus sustained soft tissue cervical and low back sprains and that the right hip contusion was consistent with bursitis.

A March 23, 2018, left shoulder MRI showed degenerative changes but no evidence of acute injury or internal derangement. On March 28, 2018, Mr. Tennant reviewed the MRI and diagnosed degenerative changes. On April 2, 2018, he diagnosed left shoulder sprain and degenerative changes. It was noted that Ms. Titus was seen by Dr. Abbott, an orthopedic surgeon, who opined that she may have sustained a cervical injury. Ms. Titus sought treatment with Jeffrey

Abbott, M.D., on April 3, 2018, for right hip and left shoulder injuries. Dr. Abbott diagnosed right hip labrum tear, radiculopathy, neck pain, and acute left shoulder pain. Ms. Titus had positive left shoulder impingement sign. A left shoulder MRI showed acromioclavicular joint disease. A cervical MRI was performed on April 29, 2018, and showed narrowing of the C5-6 foramina, which could affect the C5 and C6 nerve roots. There was no spinal canal stenosis. A right hip MRI performed the following day revealed a posterior labrum tear extending to the superior labrum.

Ms. Titus returned to Mr. Tennant on May 4, 2018. It was noted that a cervical MRI showed narrowing of the foramina at several levels, which could be affecting left C5-6 nerve roots. A right hip arthrogram showed a posterior labrum tear. On June 19, 2018, Ms. Titus reported continued hip pain that was aggravated by physical therapy to Mr. Tennant. The following day, Ms. Titus was seen by Dr. Abbott, who noted that she was referred to University of Pittsburg Medical Center for possible hip surgery and for a neurosurgical consultation. A cervical MRI was performed on April 29, 2018, which showed narrowing of the C5-6 foramina, that could affect the C5 and C6 nerve roots. There was no spinal canal stenosis. A right hip MRI showed a posterior labrum tear extending to the superior labrum on April 30, 2018.

On June 11, 2018, Robert Marsh, M.D., treated Ms. Titus for neck pain, bilateral arm pain, tingling, and numbness, as well as pain radiating into the right shoulder and forearm. Dr. Marsh diagnosed cervical spondylosis and radiculopathy. On August 11, 2018, he noted that a cervical MRI showed mild, age-appropriate degenerative changes that were not advanced enough for surgery. Dr. Marsh opined that Ms. Titus likely had a tear of the cervical or trapezius muscle. He stated that the condition can be difficult to treat and had a long healing period. He recommended an epidural steroid injection.

Dr. Soulsby performed an independent medical evaluation on July 31, 2018, in which he diagnosed right hip labrum tear, acute lumbar sprain/strain, mild to moderate lumbar degenerative disc disease, acute cervical sprain/strain, cervical degenerative disc disease, and left shoulder sprain. Dr. Soulsby found that Ms. Titus had reached maximum medical improvement for her cervical spine, lumbar spine, and left shoulder. However, she had not reached maximum medical improvement for the right hip. Dr. Soulsby opined that the MRI arthrogram showed a labrum tear, and he recommended surgical repair.

Scott Schweizer, M.D., treated Ms. Titus on September 7, 2018, for pain in her right hip, left shoulder, neck, and low back as well as cervical and lumbar radiculopathy. The claims administrator approved a request from Dr. Schweizer for right hip arthroscopy and physical therapy on September 19, 2018. On September 21, 2018, the claims administrator added right hip sprain to the claim. Ms. Titus underwent the right hip arthroscopy on September 25, 2018. On September 24, 2018, the claims administrator denied authorization of an evaluation by Dr. Schweizer.

Ms. Titus returned to Dr. Schweizer on October 8, 2018, for follow-up after her right hip surgery. She was to continue physical therapy. Ms. Titus was also to undergo MRI and x-rays of the left shoulder due to a lack of progress with conservative treatment and therapy. The claims administrator denied the request for a left shoulder MRI on October 12, 2018. Ms. Titus protested

the decision and underwent the left shoulder MRI on October 23, 2018. It showed subacromial subdeltoid bursitis, acromioclavicular joint degeneration, mild glenohumeral joint degeneration with diffuse labral degeneration, and minor rotator cuff tendinopathy with partial tearing at the supraspinatus and infraspinatus tendon joint. Ms. Titus was seen by Eric Donovan, PA-C, on October 31, 2018, for numbness and tingling on the left side of her face and left arm. Epidural steroid injections and physical therapy was recommended.

On November 5, 2018, Dr. Schweizer noted that the left shoulder MRI showed tendinopathy and a small partial thickness tear of the rotator cuff. He opined that the MRI also showed a small defect along the pectoralis, likely indicating the muscle was peeled back. He stated that this indicates the condition was the result of the work-related injury. He diagnosed left shoulder pain of unspecified chronicity and subacromial impingement.

In a November 18, 2018, Record Review, Dr. Fadel opined that the impact of the collision in Ms. Titus's accident was sufficient to cause the right hip labrum injury. He also opined that the head/neck injury was sufficient to aggravate Ms. Titus's degenerative spondylosis. Dr. Fadel asserted that the cervical spine should be considered part of the claim and recommended physical therapy and pain management. On November 16, 2018, the claims administrator authorized a physical therapy consultation with services dates from November 26, 2018, to January 21, 2019. The claims administrator authorized referral to a pain clinic with services dates from November 26, 2018, to January 21, 2019 in a November 26, 2018, Order.

In a November 27, 2018, Record Review, Dr. Fadel concluded that though there appeared to be an occasional overlap in Ms. Titus's cervical and left shoulder symptoms, the record failed to show sufficient evidence of causation. He noted that independent medical evaluations were conflicting. Dr. Fadel stated that his opinion was supported by the fact that Ms. Titus was found to be at maximum medical improvement and the long period of time between the accident and the emergence of left shoulder symptoms. Dr. Fadel concluded that the left shoulder was not a compensable component of the claim.

On December 5, 2018, the claims administrator denied a referral to a pain clinic and a physical therapy consultation. It denied physical therapy and injections on December 6, 2018. Ms. Titus returned for follow up with Mr. Tennant on December 6, 2018, and reported continued right hip pain and left shoulder pain. She was unable to return to work.

Ms. Titus testified in a December 13, 2018, deposition that she experienced left shoulder pain following her accident, but her physicians believed the pain may have been referred from the cervical spine. She stated that she continues to have right hip pain, but the majority of her pain was in the left shoulder. Ms. Titus testified that she was unable to return to work.

In a December 15, 2018, Record Review, Dr. Soulsby opined that additional physical therapy and epidural steroid injections were necessary treatment for preexisting degenerative disease only. He stated that Ms. Titus's cervical sprain/strain had resolved. Dr. Soulsby noted that he evaluated Ms. Titus on July 31, 2018, and determined that she had an acute cervical sprain/strain superimposed upon preexisting degenerative disc disease. He opined that she was at maximum

4

medical improvement for the compensable injury, and her continued symptoms are the result of degenerative disc disease.

On January 2, 2019, Dr. Schweizer diagnosed left shoulder subacromial impingement, superior labrum anterior to posterior (SLAP) tear, biceps tendonitis, and acromioclavicular joint arthritis. He recommended left shoulder arthroscopy. The claims administrator denied a request for authorization of left shoulder arthroscopy and an arm sling on January 8, 2019. Ms. Titus protested and underwent left shoulder surgery on January 29, 2019. The post-operative diagnoses were shoulder pain of unspecified chronicity, subacromial impingement, SLAP tear, biceps tendonitis, acromioclavicular joint arthritis, mild rotator cuff partial thickness tear, and subacromial bursitis. On February 4, 2019, the claims administrator denied the addition of superior glenoid labrum lesion, shoulder pain, left shoulder bicipital tendinitis and left shoulder impingement syndrome to the claim, and in a separate decision, denied the addition of left shoulder osteoarthritis to the claim

In a February 22, 2019, Record Review, Dr. Soulsby stated that he reviewed additional records, including a left shoulder MRI and Dr. Schweizer's reports. Dr. Soulsby noted that he examined Ms. Titus three times and concluded that the evidence does not indicate Ms. Titus sustained a work-related acute disc injury. He stated that the radiographic findings were degenerative and commonly seen in people Ms. Titus's age. Dr. Soulsby opined that Ms. Titus's continued pain was not the result of her work injury. He also opined that the left shoulder SLAP tear was not the result of the compensable injury because the first post-injury MRI did not show a rotator cuff tear or labrum injury. Dr. Soulsby stated that impingement is usually degenerative. Dr. Soulsby also opined that Ms. Titus did not develop left shoulder biceps tendinitis or acromioclavicular degenerative joint disease as a result of the compensable injury. Dr. Soulsby concluded that physical therapy was reasonable for the right hip and that acute cervical strain and left shoulder strain should be added to the claim. The claims administrator added cervical sprain and left shoulder joint sprain to the claim on February 26, 2019.

In its March 29, 2019, Order, the Office of Judges considered the claims administrator's decisions adding right hip sprain to the claim and denied authorization of an evaluation by Dr. Schweizer, a left shoulder MRI, a referral to a pain clinic, a physical therapy consultation, physical therapy, injections, authorization of a left shoulder arthroscopy, and an arm sling. The Office of Judges added right hip labral tear to the claim and authorized the requested medical benefits. The Office of Judges found that the claim was held compensable for right hip strain. Ms. Titus continued to have pain following conservative treatment, so an MRI was performed. The right hip labrum was poorly evaluated but there was indication of an underlying injury. Dr. Soulsby evaluated Ms. Titus and diagnosed a torn right hip labrum. Dr. Schweizer performed surgery to treat the condition. The Office of Judges concluded that Ms. Titus sustained a right hip labrum tear as a result of her compensable injury.

Regarding the requests for left shoulder treatment, the Office of Judges found that the requests for an evaluation with Dr. Schweizer and a left shoulder MRI were denied by the claims administrator because the left shoulder was not a compensable component of the claim. The Office of Judges found that the Report of Injury states that Ms. Titus injured her left shoulder. Further,

treatment notes from Wheeling Hospital that day also indicate a left shoulder injury. Left shoulder sprain was added to the claim on February 26, 2019. The Office of Judges also found that Dr. Soulsby opined in his March 6, 2018, Record Review that Ms. Titus sustained a left shoulder sprain. The Office of Judges found that the medical records show she continued to have left shoulder pain after receiving conservative treatment. It therefore determined that an evaluation by Dr. Schweizer was appropriate, necessary treatment. A left shoulder MRI was also found to be necessary medical treatment. Finally, the Office of Judges concluded that the request for physical therapy and injections, made by Dr. Schweizer, should be granted as it was reasonably required medical treatment for the compensable left shoulder sprain.

Lastly, the Office of Judges determined that referral to a pain clinic and a physical therapy consultation should be granted. The request was made by Dr. El-Kadi, who examined Ms. Titus on October 26, 2018, and recommended the treatment for the claimant's neck pain and disc bulges. The Office of Judges found that the claims administrator's denial was based on Dr. Soulsby's evaluation, in which he found Ms. Titus had reached maximum medical improvement and required no further cervical treatment. Dr. Soulsby found 15% cervical impairment in his evaluation, half of which he apportioned to severe degenerative disc changes. The Office of Judges found that 7.5% impairment for the compensable injury was still significant. It also determined that Dr. Soulsby's finding of maximum medical improvement was premature. The Office of Judges noted that several physicians stated that the left shoulder and cervical spine symptoms could be overlapping. Dr. Fadel opined in his Record Reviews that Ms. Titus sustained a cervical injury and the requested treatment should be authorized. The Office of Judges found his opinion to be persuasive. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on October 19, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970). Ms. Titus has shown by a preponderance of the evidence that she sustained a right hip labral tear as a result of her work-related injury. She consistently reported right hip pain and when a clear MRI was obtained of the right hip, it showed the injury.

The Board of Review was also correct to affirm the Office of Judges' authorization of the requested medical benefits. West Virginia Code § 23-4-3(a)(1) (2019) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. The requested left shoulder treatment was properly authorized. The claim has been held compensable for left shoulder sprain, and the evidence indicates the treatment is reasonable and necessary. Lastly, physical therapy and injections for the cervical spine were properly authorized. Ms. Titus sustained a cervical spine injury and a preponderance of the evidence indicates the requested treatment is medically required.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous

conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: March 19, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7